Filed 7/13/23  P. v. McKinney CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>　　v.<br><br>JOHN KIRK MCKINNEY,<br><br>　Defendant and Appellant. | G061751<br><br>(Super. Ct. No. 09CF1955)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Reversed and remanded with directions.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Lynne G. McGinnis and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant John Kirk McKinney challenges an order denying his petition for resentencing under former Penal Code section 1170.95.[1]  Although the order was based on appellant's alleged failure to state a prima facie case for relief, the record does not conclusively establish appellant is ineligible for resentencing as a matter of law.  We therefore reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In 2003, 77-year-old Cecil Warren was confronted by two men in a parking lot.  One or both of the men demanded Warren's money, struck him in the face and took his wallet.  Warren lapsed into a coma and died.  Appellant and his friend Curtis Hill were identified as the assailants, but at appellant's murder trial there was conflicting evidence as to whether he actually participated in the attack.  Appellant told the police that although he was at the scene with Hill, he did not speak to, hit, or take anything from Warren.  However, Warren told responding officers that both Hill and appellant hit him in the face with their fists or some kind of object.

During closing argument, the prosecutor conceded appellant did not intend to kill Warren.  However, he argued appellant was guilty of first degree felony murder because he and Hill killed Warren during the commission of a robbery.  Alternatively, the prosecutor submitted appellant was guilty of second degree implied malice murder for perpetrating or aiding and abetting that offense.  The jury convicted on the lesser offense, for which appellant was sentenced to prison for 15 years to life.  On direct appeal, we affirmed the judgment, which has since become final.  (*People v. McKinney* (Nov. 22, 2013, G047331) [nonpub. opn.].)[2]

---

[1]  In 2022, that section was renumbered without substantive change as Penal Code section 1172.6.  (Stats. 2022, ch. 58, § 10.)  All further statutory references are to the Penal Code.

[2]  Hill was tried separately and convicted of special circumstances felony murder.  (See *People v. Hill* (Nov. 5, 2013, G046249) [nonpub. opn.].)  His petition for resentencing was denied because the jury's true finding on the special circumstances allegation conclusively established he committed an act that led to Warren's death.  (*People v. Hill* (June 29, 2022, G060426) [nonpub. opn.].)

2

However, in 2018, the Legislature enacted Senate Bill No. 1437, which retroactively narrowed the scope of vicarious liability for the crime of murder. (Stats. 2018, ch. 1015 (SB 1437).) On January 2, 2019 – the day after SB 1437 went into effect – appellant petitioned to vacate his murder conviction and to be resentenced pursuant to that measure. The trial court summarily denied the petition for two reasons. First, it determined SB 1437 was facially unconstitutional as violative of the California Constitution. Second, from a factual standpoint, it found appellant was ineligible for resentencing because he was either the actual killer or a major participant in the underlying robbery.

Appellant was paroled from prison on May 1, 2020. On August 30, 2022, we granted his petition for a writ of habeas corpus, allowing him to file a late notice of appeal from the trial court's order, which he did the very next day. His appeal takes aim at the trial court's decision to deny his petition for resentencing at the prima facie stage of the proceedings without conducting an evidentiary hearing on his entitlement to relief.

DISCUSSION

At the time the trial court issued its ruling in July 2019, SB 1437 was in its infancy, so there were very few cases to guide the court in its analysis. Since then, decisional law has firmly established that SB 1437 is a constitutional legislative enactment. (See, e.g., *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270; *People v. Lamoureux* (2019) 42 Cal.App.5th 241.)

Furthermore, the California Supreme Court has clarified that, in evaluating whether a petition for resentencing has established a prima facie case for relief, the trial court may not engage in judicial factfinding. (*People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).) In light of these developments, the parties agree that both of the trial court's stated reasons for denying appellant's petition are invalid.

Nevertheless, the Attorney General contends the trial court's denial order should be affirmed because appellant was convicted of implied malice murder as either a

3

perpetrator or an aider and abettor of that offense. The Attorney General argues that regardless of which of those theories the jury adopted, appellant is ineligible for resentencing because both of them required the jury to find that he personally acted with implied malice. Stated differently, the Attorney General argues resentencing is precluded as a matter of law because the jury did not convict appellant based on a theory of imputed liability. For the reasons explained below, we disagree.

*Legal Framework*

SB 1437 was intended to ensure a defendant's culpability is commensurate with his conduct. (*Lewis, supra,* 11 Cal.5th at p. 971.) To that end, the measure eliminated the natural and probable consequences theory in murder cases by providing that malice may not be imputed to a person based solely on his participation in a crime. (§ 188, subd. (a)(3).) In addition, SB 1437 reined in the felony murder rule so that it can only be applied to nonkillers if they aided and abetted the actual killer with the intent to kill, or they were a major participant in the underlying felony and acted in a manner that was recklessly indifferent to human life. (§ 189, subd. (e).)

SB 1437 also created a statutory procedure, originally codified in former section 1170.95, by which defendants who have been convicted of murder based on the felony murder rule or the natural and probable consequences doctrine may petition for resentencing if their conduct did not constitute murder as redefined by SB 1437. (Former § 1170.95, subd. (a).) If the petition makes a prima facie showing to that effect, the trial court must issue an order to show cause and conduct an evidentiary hearing at which the prosecution must prove beyond a reasonable doubt the defendant would still be liable for murder despite the changes wrought by SB 1437. (*Id*., subds. (c), (d).) Otherwise, the court must vacate the defendant's murder conviction and sentence him anew. (*Ibid*.)

When it was first enacted, former section 1170.95 applied only to defendants who were convicted of murder under the felony murder rule or the natural and probable consequences doctrine. (Former § 1170.95, subd. (a).) However, effective

4

January 1, 2022, the scope of the statute was expanded to include defendants who were convicted of murder pursuant to any "other theory under which malice [was] imputed to [them] based solely on [their] participation in a crime[.]"  (Former § 1170.95, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)  This change applies to appellant's case because the order denying his petition for resentencing is not yet final.  (*In re Estrada* (1965) 63 Cal.2d 740, 744-745; *People v. Porter* (2022) 73 Cal.App.5th 644, 652; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006-1007.)

In determining whether appellant has made a prima facie showing for resentencing, we may consider the record of conviction, which includes the jury instructions given at his trial.  (*Lewis, supra*, 11 Cal.5th at pp. 971-972; *People v. Jenkins* (2021) 70 Cal.App.5th 924.)  But we must keep in mind the threshold for establishing a prima facie case for resentencing is "'very low.'"  (*Lewis, supra*, 11 Cal.5th at p. 972.) An evidentiary hearing is required unless the record *conclusively establishes* the defendant is ineligible for resentencing as a matter of law.  (*People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis, supra*, 11 Cal.5th at p. 971.)

The Attorney General asks us to employ a more forgiving standard of review and reverse only if it is reasonably likely the jury misunderstood the instructions to permit a conviction based on a theory of imputed malice.  However, the reasonable likelihood standard is used on direct appeal to determine whether the jury interpreted its instructions in a manner that violated the defendant's constitutional rights.  (See, e.g., *Boyde v. California* (1990) 494 U.S. 370, 380; *People v. Rogers* (2006) 39 Cal.4th 826, 873.)

Here, we are concerned with the different issue of whether the defendant has made a prima facie case for resentencing under an ameliorative sentencing law.  In that context, the "ultimate question" is whether the information contained in the record of conviction defeats the defendant's petition.  (*People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1269.)  "Only '[i]f the petition and record in the case *establish conclusively that the*

5

*defendant is ineligible for relief*'" may we affirm the summary denial of a petition without an evidentiary hearing. (*Ibid.*, quoting *People v. Strong, supra*, 13 Cal.5th at p. 708.) In this case, that would require proof that, in convicting appellant of second degree murder, the jury necessarily determined he personally harbored malice and did not convict appellant based on a theory of imputed malice. We now turn to that issue.

*Relevant Jury Instructions*

Appellant's jury was instructed a person may be guilty of a crime as either the actual perpetrator or as an aider and abettor. The latter theory was encompassed in CALCRIM No. 401, which explained to the jury, "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] One. The perpetrator committed the crime. [¶] Two. The defendant knew that the perpetrator intended to commit the crime. [¶] Three. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime. [¶] And, four. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime."

As to that theory, the jury was also told, "Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime." (CALCRIM No. 401.) And it was instructed, "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." (CALCRIM No. 400.)

With respect to the charge of murder, appellant's jury was instructed pursuant to CALCRIM No. 520 that murder requires "a state of mind called malice aforethought. [¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with express malice if he unlawfully intended to kill. [¶] The

6

defendant acted with implied malice if: [¶] One. He intentionally committed an act. [¶] Two. The natural and probable consequences of the act were dangerous to human life. [¶] Three. At the time he acted, he knew his act was dangerous to human life. [¶] And, four. He deliberately acted with conscious disregard for human life."

### Jury's Questions

During deliberations, the jury sent a note to the trial judge asking, "If a crime is committed, are all parties involved equally responsible according to the law?" The judge replied, "The answer to that could be yes or no, depending upon some other determinations." He suggested the jurors might gain better insight on the issue by reviewing the instructions on aiding and abetting.

The jurors also asked the judge to provide them with instructions on second degree murder. The judge told them second degree murder "is the kind of murder that is discussed in CALCRIM [No.] 520." "That is the only theory of second degree murder in this case."

### Aiding and Abetting Implied Malice Murder

The jury's questions indicate it may have convicted appellant of second degree murder for aiding and abetting implied malice murder. Given that possibility, we directed the parties to submit supplemental briefing on *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*) and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*). Those cases are instructive because they examine how the standard jury instructions on aiding and abetting and implied malice murder correlate with each other.

In *Powell*, the defendant Christopher Langlois was convicted of implied malice murder for aiding and abetting a group beating during which the victim was fatally stabbed. (*Powell*, *supra*, 63 Cal.App.5th at p. 706.) On appeal, the court rejected Langlois' argument that aiding and abetting a murder requires express malice, i.e., the specific intent to kill. Relying on *People v. Gentile* (2020) 10 Cal.5th 830, 850, the court determined an aider and abettor who lacks such intent can still be convicted of second

degree murder if he or she intentionally aids the commission of a life threatening act in conscious regard of the risk created by that act. (*Powell*, *supra*, 63 Cal.App.5th at p. 713.)

More particularly, "to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life." (*Powell*, *supra*, 63 Cal.App.5th at p. 713, fn. omitted.)

However, *Powell* found CALCRIM No. 401 failed to adequately convey these requirements to Langlois' jury because the instruction was not specifically tailored to the elements of implied malice murder. Instead, it simply required the jury to find Langlois knowingly assisted the perpetrator in committing "the crime." (*Powell*, *supra*, 63 Cal.App.5th at p. 714.) *Powell* ruled that direction was erroneous because "the aider and abettor of implied malice murder need not intend the commission of *the crime* of murder. Rather, . . . he or she need only intend the commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life." (*Ibid*.)

The Attorney General argues *Powell* is inapt because it involved a direct appeal from a criminal conviction. Indeed, the *Powell* court expressly noted, "Nothing we say herein is intended to express an opinion as to the appropriate outcome on a section 1170.95 petition should Langlois choose to file one." (*Powell*, *supra*, 63 Cal.App.5th at p. 711, fn. 25.) However, as the *Langi* decision makes clear, the reasoning of *Powell* logically applies in the context of such a petition.

8

Like the defendant in *Powell*, Remus Langi was convicted of implied malice murder for aiding and abetting a group beating that led to the victim's death. (*Langi, supra*, 73 Cal.App.5th at p. 975.)  In assessing his right to resentencing relief under former section 1170.95, the *Langi* court focused on CALJIC No. 3.01, the predecessor to CALCRIM No. 401.  As given to Langi's jury, that instruction provided, "'A person aids and abets the commission . . . of a crime when he or she:  [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, . . . [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime.'"  (*Id.* at p. 981, fn. omitted.)  Langi's jury also received CALJIC No. 8.31, the predecessor to CALCRIM No. 520, which described the elements of implied malice murder.

Although CALJIC No. 8.31 described those elements correctly, *Langi* found CALJIC 3.01 failed to adequately explain to the jury that, like the perpetrator himself, an aider and abettor must personally harbor implied malice to be guilty of second degree murder.  The court cited two aspects of the instruction as being deficient in that regard.

First, like the *Powell* court, *Langi* criticized CALJIC No. 3.01's phrasing that the aider and abettor must act with "'the intent or purpose of committing or encouraging or facilitating the commission of the crime[.]'"  (*Langi, supra*, 73 Cal.App.5th at p. 981.)  *Langi* found, "That language does not state that the aider and abettor must himself have known that the act he aided was life-threatening, or that he must himself have acted with indifference to human life.  In the context of the full instructions that were given, there is no reason to conclude that the jury found that to be true of [Langi's] state of mind."  (*Id*. at p. 982.)

The *Langi* court also expressed concern about how CALJIC No. 3.01 phrases the knowledge requirement for aiding and abetting liability.  In particular, the

9

court homed in on the fact CALJIC No. 3.01 states that requirement is satisfied so long as the accomplice was aware of the perpetrator's "unlawful purpose," which could include the intent to merely strike, injure or embarrass or the victim. (*Langi, supra*, 73 Cal.App.5th at p. 982.) *Langi* held this wording impermissibly permitted the jury to convict Langi of implied malice murder "whether or not [he] intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Id.* at p. 983, fn. omitted.) Therefore, the court reversed the summary denial of Langi's petition for resentencing and remanded the matter for an evidentiary hearing on his right to relief. (*Id.* at p. 984.)

The Attorney General contends the CALCRIM instructions given at appellant's trial were better than the CALJIC instructions used in *Langi* because they made it more apparent the perpetrator had to act with conscious disregard for life and commit the crime of implied malice murder before an aider and abettor could be convicted of that offense. However, both sets of instructions frame the knowledge requirement for aiding and abetting as knowledge of the perpetrator's "unlawful purpose," which was never defined for appellant's jury.

Moreover, both sets of instructions require the aider and abettor to assist the *crime*, rather than the specific *acts* that constitute implied malice murder. So, in terms of "relevant substance," the instructions given in *Langi* were "identical" to the instructions provided at appellant's trial. (*Langi, supra*, 73 Cal.App.5th at p. 983.) Therefore, the reasoning of *Langi* applies with equal force in our case. (Cf. *People v. Maldonado, supra,* 87 Cal.App.5th at pp. 1265-1267 [applying *Langi* to reverse the summary denial of the defendant's petition for resentencing on his conviction for first degree lying in wait murder].)

Even so, the Attorney General claims the reasoning of *Langi* is unsound. Contrary to what *Langi* instructs us, he claims it was not improper for CALCRIM No. 401 to direct the jury's attention to whether appellant aided and abetted "the crime"

10

because that's the term the Supreme Court has used to explain the intent requirement for direct aiding and abetting. (See *People v. Beeman* (1984) 35 Cal.3d 547, 560 [stating the requisite intent is established when the aider and abettor knowingly intends to facilitate "the perpetrator's commission of the crime."].) But in so doing, the Supreme Court was discussing the general principles governing aiding and abetting liability. It was not addressing the adequacy of CALCRIM No. 401 in terms of conveying those principles in the context of implied malice murder, which is the issue in our case.

Nonetheless, the Attorney General argues appellant's jurors would have understood CALCRIM No. 401's reference to "the crime" was a reference to implied malice murder, and therefore they would not have convicted him of that offense unless they were convinced he personally satisfied all of the requirements for that offense. However, the jury was instructed on multiple crimes and theories, including felony murder, express malice murder, implied malice murder and robbery. At no point was implied malice murder identified as "the crime" referenced in CALCRIM No. 401. To the contrary, in discussing the law on aiding and abetting liability, the prosecutor largely focused on the crime of robbery, claiming anyone involved in that offense was liable for murder.

The jury was also told, per the court's instructions, that a person who aids and abets one crime may be liable for other crimes that occurred during the first crime. This instruction bolstered the implication that appellant did not have to personally possess the mindset required for implied malice murder to be guilty of that offense if he aided and abetted a crime that culminated in that offense.

So did the term "unlawful purpose," which was used in CALCRIM No. 401 to describe the knowledge requirement for aider and abetting. The Attorney General contends *Langi*'s concerns about that term are misplaced because CALCRIM No. 401 requires both knowledge of the perpetrator's unlawful purpose *and* the specific intent to aid, promote or instigate the perpetrator's commission of the crime. The Attorney

11

General would have us believe that, taken as a whole, this language precluded a conviction for aiding and abetting an implied malice murder unless the jury believed appellant personally harbored the mental state required for that offense.

But in order to be liable for aiding and abetting an implied malice murder, the defendant must know the perpetrator intended to commit a life-threatening act. (*Powell, supra*, 63 Cal.App.5th at p. 713.) Knowing of the perpetrator's "unlawful purpose," which is all CALCRIM No. 401 requires, is not enough because as *Langi* explains, that phrase encompasses mental states that do not arise to the level of implied malice murder. (*Langi, supra*, 73 Cal.App.5th at p. 982.) That's why "the standard aiding-and-abetting instructions are ill suited to the crime of second degree murder. If, as here, a trial court uses such an instruction without tailoring it to the specifics of that crime, the instruction creates an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Ibid.,* fn. omitted.)

Although such a finding was not required in this case, the jury could have convicted appellant of implied malice murder without finding he personally acted with knowledge of the danger to, and with conscious disregard for, human life. Because the record does not conclusively negate that possibility, an evidentiary hearing is required on appellant's right to resentencing relief. (*Langi, supra*, 73 Cal.App.5th at p. 984; accord, *People v. Maldonado, supra,* 87 Cal.App.5th at pp. 1266-1267 [reversing summary denial of resentencing petition and remanding for evidentiary hearing where jury instructions allowed for the possibility the defendant was convicted of murder based on a theory of imputed malice].)

"At that hearing, the court may find that appellant was the actual killer or that he was an aider and abettor who facilitated the killing with personal disregard for human life, in which case his petition will be denied. If the prosecution fails to prove that he was either, he will be entitled to relief." (*Langi, supra*, 73 Cal.App.5th at p. 984.)

12

## DISPOSITION

The trial court's order denying appellant's petition for resentencing is reversed and the matter is remanded for an evidentiary hearing pursuant to section 1172.6.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOTOIKE, J.

13